UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED

NOV 2 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

1

2  Kevin B Prasad,

3          Plaintiff,                    Declaration of

4             v                          Kevin B Prasad

5

6  Carlos G Bolanos

7          et.al.                        Civil Action No.

8  Individually and in their

9  official capacities,                  4:22-cv-01346-JST

10         Defendants

11

12  Kevin B Prasad hereby Declares:

13      I have been incarcerated as a pre-trial detainee since 26 April 2018,

14  in San Mateo County Jails. I was able to receive mail from my family.

15  However as of 26 April 2020, Defendants stopped allowing Plaintiff

16  from receiving the unprotected correspondence, instead opting to force

17  my family and any member of the public who would like to

18  communicate with Plaintiff via correspondence, to send all

19  correspondence to Smart Jail Communications (SJC) in Seminole

20  Florida. This is a violation of Plaintiffs Federal Title 15 §1063(c),

21  18USCS§1702, Prison Legal News(PLN), a Project of the Human Rights

22  Defense Center v County of Ventura Case No. 2:14-cv-00773-GHK-E,

23  First Amendment, Fifth Amendment, Eighth Amendment, and Fourteenth

24  Amendment Protections to the United States Constitution

1  Defendants claims the reason why this mail policy
2  was enacted was due to the fact that an inmate, not
3  myself, received film strips of Suboxone via the correspondence
4  from a member of the public, not associated with myself.
5  Instead when an investigation was conducted by Defendants, and
6  Defendants did not find the inmate and the Member of the
7  Public who committed this act. Instead Defendants decided
8  to punish all the inmates, including myself, by not allowing
9  inmates to receive physical mail. Defendants use of Corporeal
10  punishment towards all inmates, including Myself, and Members of
11  the public including My family family violating the First,
12  Eighth, and Fourteenth Amendments to the United States
13  Constitution.

14  Sometime in 2022, Defendants authorized inmates Medical
15  use of Suboxone and Sublodicade (Plaintiff is unsure if spelling
16  is Correct). Plaintiff does not use Suboxone or Sublodicade.
17  Plaintiff believes that Defendants original reasoning for not allow
18  allowing inmates correspondence has been nullified and
19  Defendants should allow inmates, including Plaintiff, access to
20  physical correspondence.

21  Defendants operate two Correctional Facilities, McGuire Correctional
22  Facility (MCF) and Maple Street Correctional Center (MSCC), the two
23  facilities have pods where in inmates are housed. At MCF, each
24  Pod has 10 SJC tablets per 90 inmates. At MSCC, each pod has

2

1  10 SJC tablets per 64 inmates. Per SMCSO Inmate Rules, Regulations,
2  & General Information ~~and~~ Rule # 55." Inmates shall not bring
3  the tablet inside of any cell or shower stall." Currently, members of the
4  public wishing to contact Plaintiff, must pay extra to send all
5  Correspondence to SJC in Seminole Florida when a member of the
6  Public, not a Correctional Officer assigned to MCF or MSCC and not
7  a member of law enforcement, violate ~~and privacy to~~ the Plaintiff,
8  and member of the public wishing to communicate with Plaintiff, privacy
9  by opening correspondence, scanning the correspondence to the
10 Plaintiffs tablet account, then destroys the correspondence in violation
11 of 18 USCS §1702.
12
13     Because Plaintiff does not have unlimited access to the ~~tablet~~
14 SJC tablet, Plaintiff does not have unlimited access to his
15 Correspondence. Furthermore, Defendants policy is in violation of
16 Federal Title 15 §1063a which states "there is no limitation on
17 the volume of mail that an inmate may send or receive..."
18 Defendants policy puts a limitation on the volume of mail
19 Plaintiff can receive.
20     Defendants use of Corporeal Punishment towards Plaintiff is in
21 violation of Plaintiffs' Eighth Amendment Protections. Defendants could
22 not locate culprit(s) involved with using inmate correspondence to send
23 in drugs into either MCF or MSCC (Plaintiff is not fully aware of the
24 specifics of the incident which caused Defendants to enact correspondence
25 Policy). An investigation subsequently did not implicate that Plaintiff was

1  Involved with smuggling drugs into MCF or MSCC. If Plaintiff was
2  involved, proper punishment would be to charge inmate Plaintiff, stop all
3  visitation for Plaintiff for Two years, and further scrutiny for all
4  correspondence plaintiff would receive. Courts across this country have
5  adopted these rules. Courts across this country have never ruled that
6  halting inmate correspondence was proper practice. In fact courts across
7  this country have held that Inmate correspondence may be opened and
8  inspected, and censored as long as "Prison officials were required to
9  show that a regulation authorizing mail censorship furthered one or
10 more substantial governmental interests in security, order and
11 rehabilitation and that the limitation of First Amendment freedoms was
12 no greater than essential to the protection of the particular
13 government interest involved." (Procunier v Martinez, 416 U.S. 396, 94
14 S. Ct. 1800, 40 L. Ed 2d 224 (1974)) Courts across this country have
15 held that inmates have reason for Privacy and that while in custody the
16 Fourth Amendment did not apply. Which is why Defendants are allowed to
17 Open and search Plaintiffs correspondence. While Plaintiff does not expect
18 Privacy from members of the public opening, reading and destroying
19 Plaintiffs correspondence in the spirit of 18 USCS § 1702.
20     Martinez's rule was based upon the courts perception of the
21 Constitutional Rights of the individuals who engaged in direct, particularized
22 Personal correspondence with Prisoners. (Guajardo v Estelle, 580 F. 2d 748
23 (5 th Cir 1978))

1   " Guided by decisions dealing with the general problem of
2   restrictions on First Amendment liberties, the rejected cases involving
3   "prisoners rights" as a source of the standard to be employed.
4   Thus, Martinez decided not the parameters of the rights of
5   free speech surviving incarceration in a prison, but the limited
6   situated in which prison regulations could have the effect of
7   inhibiting the First Amendment rights of the persons wishing to
8   correspond with inmates." (Guajardo, Supra)
9       "We deal with a different problem since the general correspondence
10  rule touch not only the rights of the prisoners to receive mail but the
11  rights of the persons not incarcerated to send mail to the prison and to
12  receive mail from those imprisoned in it." (Guajardo, Supra). Defendants
13  Correspondence policy does not hinder plaintiffs rights to send mail
14  to members of the public, only members of the publics right to correspond
15  with Plaintiff. Defendants correspondence policy also does not hinder
16  Plaintiffs Legal Correspondence.
17      " Martinez teaches that the limitations on First Amendment freedoms
18  must be no greater than is essential to the protection of the
19  particular interest involved and that a regulation that furthers an
20  important or substantial government interest will nevertheless be
21  invalid if its sweep is unnecessarily broad." (Guajardo, Supra).
22  Defendants correspondence policy is unnecessarily broad since an
23  investigation did not find Plaintiff was involved with smuggling

1  drugs into MCF or MSCC using the inmate correspondence system.
2  Defendants correspondence policy is further unnecessarily broad
3  Since an investigation did not find a member of the public, connected
4  to Plaintiff, who sent correspondence with Suboxone or any other
5  illegal substances into MCF or MSCC.
6      18 USCS §1702 cannot just be applied to Plaintiff, but also
7  to members of the public wishing to communicate with Plaintiff via
8  Correspondence.

9      *Any prior restraint on expression comes to a Court with a heavy
10 presumption against its Constitutional validity (Nebraska Press Association
11 v Stuart 427 U.S. 539, 96 S.Ct 2791, 49 L.Ed. 2d 683 (1976);
12 New York Times v United States, 403 US 713, 91 S.Ct. 2140, 29 L.Ed. 2d
13 822 (1971); Carroll v President & Commissioners of Princess Anne, 393 U.S.
14 175, 89 S.Ct. 347, 21 L.Ed. 2d 325 (1968)) The district Court... found
15 that the evidence demonstrated that the amount of mail sent and
16 received had no effect on prison security. (Cif Rowan v United States Post
17 Office Dept., 397 U.S. 728, 90 S.Ct. 1484, 25 L.Ed. 2d 736 (1970)). We
18 think that the Martinez and Pell taken together, establish a rule that
19 Prisoners retain those First Amendment Rights not inconsistent with prison
20 security, order or rehabilitation. (Guajardo, Supra)
21     In the close and restrictive atmosphere of a prison First Amendment
22 guarantees taken for granted in society at large assume far greater
23 significance. The simple opportunity to read a book or write a letter,
24 whether it expresses political views or absent affections, supplies a
25 vital link between the inmate and the outside world, and nourishes the

1  Prisoners mind despite the blankness and bleakness of his environment,
2  (Wolfish v Levi 573 F.2d 118 (2 Cir 1978). Accordingly, Courts have
3  jealously protected the inmate in his exercise of First Amendment
4  perogatives. (Procunier v Martinez, 416 U.S. 396, 40 L.Ed. 2d 224, 94
5  S.Ct. 1800 (1974); Sostre v McGinnis, 442 F.2d 178, 199 (2d Cir 1971)
6  (En banc), cert. denied sub nom. Oswald v Sostre, 405 U.S. 978,
7  31 L.Ed.2d 254, 92 S.Ct. 1190 (1972)). Two of the MCCs policies,
8  the "publishers only" rule and the reading of out-going non-
9  privileged mail significantly intrude upon this protected realm.
10 (Wolfish v Levi 573 F.2d 118 (2 Cir 1978))

11      We agree with those Courts which have struck down such
12 limitations as inconsistent with both both First Amendment and
13 Due Process (Wolfish Supra) (See eg Cruz v Hauck 515 F.2d 322,
14 333 (5th Cir 1975) ("Publisher only" rule invalidated as to receipt of
15 legal periodical) (Rheem v Malcolm 371 F.Supp. 594 (SDNY 1974))
16      Indeed, every effort should be made to preserve those
17 conditions which foster human dignity. See Bonner v Loughlin, 517
18 F.2d 1311, 1319 (7th Cir 1975).
19      It cannot be gainsaid that the reading of mail by jail
20 officials chills the expression of First Amendment Rights by
21 correspondents inside & outside the institution. It takes little
22 more than commonsense to realize that a tender note, so
23 important to the morale of the incarcerated individual, might never
24
25

7

1  be penned if the writer knew that it would first be scrutinized
2  by a guard. And, certainly, where social visits and telephone
3  calls are left unmonitored, a spurious claim of security cannot
4  vindicate infringement of so basic a right. (Wolfish, Supra)
5     Marshall, J., joined by Brennan J., concurred in the Courts
6  opinion and expressed the view (also joined by Douglas, J.) that
7  prisoners had a First Amendment Right to use the mails as a
8  medium of free expression, which right could not be infringed
9  by prison authorities in reading inmate mail as a matter of
10  course, since such blanket infringement could not be justified
11  as necessary to detect escape plans or as a useful tool in
12  the rehabilitative process, and since incoming mail could be
13  examined for contraband without being read. (Procunier, Supra)
14     The Permanent Injunction filed in PLN, Supra, lists out the
15  rules governing inmate correspondence. Furthermore, PLN, Supra,
16  invalidates the "Postcard only" rule. This case highlights the
17  fact that Defendants not allowing Plaintiff access to his physical
18  mail is a more restrictive correspondence policy does not
19  foster human dignity. Plaintiff does not have unlimited access
20  to his correspondence via Defendants Correspondence policy.

8

Furthermore, Defendants Current correspondence policy places further financial burden upon members of the public wishing to correspond with Plaintiff. Seminole Florida is on the other Side of the United States in relation to where Plaintiff, and members of the public wishing to correspond with Plaintiff, is currently incarcerated. The United States Postal Service (USPS) charges correspondence based on Size, weight, and distance correspondence must travel.

Sometime 2021, Defendants were informed that books purchased from the bookstore Amazon by a member of the public, not connected to Plaintiff, to be sent to an inmate at MCF or MSCC, again not the Plaintiff, was purchased illegally using fake Credit Cards. Defendants decided to enact a policy where inmates, including Plaintiff, could no longer receive books from bookstore/publishers like Amazon, and Barnes& Noble. Defendants instead have indiscriminately limited which publishers Plaintiff can receive books from without investigating whether or not plaintiff was involved nor determining whether Plaintiff committed such acts, Instead, Defendants, through use of Corporeal Punishment, enacted policy where Plaintiff can only receive books from an authorized publisher list in violation of Plaintiffs Fifth Amendment due process, Eighth Amendment Cruel & Unusual Punishment

1  Fourteenth Amendment Due Process, PLN, Supra, and California Penal
2  Code § 2600(4) Protections.
3
4      Defendants claim that since online purchases through Amazon,
5  and Barnes & Noble were and could be made using illegal
6  Methods, that warrants refusal for delivery to inmates, including
7  Plaintiff. Plaintiff believes that this reasoning is moot
8  due to the fact that nothing stops a member of the public
9  from purchasing books illegally, for delivery to inmates such
10 as Plaintiff, from the Defendants list of approved publishers.
11 Furthermore, this policy holds members of the public wishing to
12 Purchase books for Plaintiff accountable for actions of other
13 Members of the public not connected with Plaintiff.
14
15     The permanent injunction filed in PLN, Supra, clearly
16 lays out that books can be bought from any any authorized
17 bookstore or publisher. Amazon and Barnes & Noble are not only
18 bookstores, but they also publish some books. Plaintiff holds that
19 Defendants "authorized publishers" list "... sweep is
20 unnecessarily broad," (Guggardo, Supra) as there are many publishers
21 out there which not only sell books through their website,
22 but also use bookstores like Amazon, and Barnes & Noble to sell
23 and distribute their books. Some publishers actually sell or Amazon,
24 and Barnes & Noble exclusively. As such the Defendants interest

1  Should be regarded as invalid.
2      Plaintiff does not know when Defendants decided to enact
3  the "Provacative Pictures" policy. When members of the public
4  choose to send inmates, including Plaintiff, Physical or
5  digital copies (via SJC) of pictures, Defendants arbitrarily
6  reject pictures if the subject is clothed, but in a provacative
7  pose. This policy is too ubiquitous and subject to each of
8  Defendants employees own personal definition of provacative.
9  This policy also has a "... sweep is unnecessarily broad"
10 (Guayardo, supra). The Permanent Injunction filed in PLN, supra,
11 establishes that pictures which are provacative are allowed,
12 thereby invalidating the "Provacative Pictures" policy, and pictures
13 which display nudity are not allowed. "Adoption of that
14 rule would merely state a truism since the Supreme
15 Court has categorically settled that obscenity is outside of
16 the First Amendment's Protection" (Guayardo V Estelle 580
17 F.2d 748 (1978) US. US. App; Miller v California, 413 U.S.
18 15, 93 S.Ct 2607  37 L.Ed. 2d 419 (1973); Memoirs v
19 Massachusetts, 383 U.S. 413 86 S.Ct. 975 16 L.Ed.2d (1966);
20 Roth v United States, 354 U.S. 476, 77 S.Ct.1304, 1 L.Ed.2d 1498
21 (1957)).

11

Defendants "provacative Pictures" policy is too ubiquitous
and broad, Subject to the Defendants own personel belief
beliefs and interpretation. Some Deputies Defendants employ may
be overly strict while others quite liberal in the application of
such policy. PLN, Supra, defines what pictures are allowed and
not allowed. "Publications, Photographs, Postcards, and letters cannot
show images, drawings, artwork, or photographs of fully
exposed genitalia, buttocks or female breasts, and/or graphic
depictions of sexual acts. Medical, anthropological, literary
artistic and Scientific journals and publications are not
prohibited." ( PLN, Supra Exhibit B VIII B 7). PLN Supra,
erases the Defendants "Provacative Pictures" policy.

Defendants continue to enforce their ubiquitous and broad
"Provacative pictures" policy when it comes to members of the public
ordering periodicals for the inmate, like Plantiff. Defendants use
this policy to discriminate between the race of business owners.
Provacative Pictures can be found in periodicals such as: Time
Magazine, US Weekly, People Magazine, Sports Illustrated, Gentlemens
Quarterly (GQ) Magazine, and etc. These companies are white
owned companies and Defendants allow inmates, including
Plantiff, to receive these periodicals. However, periodicals such

12

1  as Buttz, Straight Stuntin, Kite, Spicey, and etc., which contain
2  non-nude pictures Defendants do not allow inmates, such as
3  Plaintiff, to receive these periodicals. Defendants cite their
4  "provacative pictures" policy. However, these publications (Buttz,
5  etc.,) are all owned by minority business owners who ensure
6  that their periodicals comply with the laws. Defendants's "provacative
7  "provacative pictures" policy "... sweep is unnecessarily broad"
8  (Guajardo, Supra) and not in compliance with PLN, Supra and
9  all other related court decisions. Plaintiff believes that Defendant
10 Defendants are using this policy to discriminate along the lines
11 of race between business owners.
12     With zero reasoning Defendants refuse to allow
13 inmates, including Plaintiff, access to erasers and flex r-pens.
14 PLN, Supra, establishes that inmates have a right to access
15 erasers. Flexi-pens can be found in jails within the
16 Northern District of California such as: San Francisco County
17 Jail, Alameda County Jail, Santa Clara County Jail, and etc.
18 Plaintiff should be allowed to order flexi-pens because Courts
19 require inmates to write in pen ink. Also Plaintiff is still a voting
20 member of the public and votes via absentee ballot, which requires
21 Plaintiff to use pen ink to vote and San Mateo County Voting
22 office does not accept votes in pencil. Voting is a fundamental
23 right which Plaintiff has not forefitted since Plaintiff is not a
24 convicted felon. The Plaintiff does not see why he should not
25

1  have access to erasers and flexi-pens. The Plaintiff further
2  believes that any reasoning Defendants may have is beyond
3  their judicial scope.
4
5     PLN, Supra, further established that inmates, including Plaintiff,
6  are allowed to order a welfare kit. "Each inmate is allowed, on
7  a weekly basis, to order a welfare kit, including one postage-paid
8  Postcard, one postage-paid envelope, two sheets of paper, one
9  Pencil, and one eraser. If an inmate has money in his or her
10 account, the inmates account will be debited accordingly. If
11 the inmate has no funds on account or insufficient funds, he
12 or she will still receive a welfare kit which includes the
13 above-described correspondence items." (PLN, Supra, Exhibit B
14 I. F). Access to an eraser has been established as a right
15 according to PLN, Supra.
16    If Plaintiff was incarcerated in any other County within the
17 Jurisdiction of the Northern District of California or in any of
18 California Department of Corrections & Rehabilitation (CDCR) facilities
19 he would have access to flexi-pens. However, Plaintiff is
20 incarcerated in San Mateo County Jails. The Plaintiff believes that
21 Since inmates and even prisoners of CDCR have access to flexi-
22 pens, the Plaintiff should also have access to flexi-pens even though
23 he is incarcerated in San Mateo County Jails. Any reasoning that
24 Defendants have should be rendered as moot since it is beyond
25 Defendants judicial scope.

1   The Plaintiff contends that Defendants current Correspondence
2   Policy, "Provacative Pictures" policy, Continued use of Corporeal
3   punishment (by punishing Plaintiff for actions of other inmates), and not
4   allowing Plaintiff access to erasers and Flexi-pens is in violation
5   of Title 15 §1063a , 18 ~~USCS~~ USCS § 1702, PLN, Supra, First
6   Amendment, Fifth Amendment, 8Eighth Amendment and Fourteenth
7   Amendment Protections. Any reasoning that Defendants May provide
8   Should be ~~moot~~ considered moot as it is beyond Defendants judicial
9   Scope.

13   I declare under penalty of perjury that the foregoing is
14   true and correct. Executed at Redwood City, CA on 30 October
15   2022.

18   30 Oct 2022
19   _____
      Date

21   Kev B Prsd
22   _____
23   Kevin B Prasad  #1222492

24   1300 Maple St, Redwood City CA, 94063
25   _____
      Address

15